UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WORLD SURVEILLANCE GROUP INC., <br><br> Plaintiff, <br><br> v. <br><br> LA JOLLA COVE INVESTORS, INC., <br><br> Defendant. | Case No. 13-cv-03455-JD <br><br> **ORDER GRANTING MOTION TO DISMISS** <br><br> Re: Dkt. No. 39 |

# INTRODUCTION

This case arises out of alleged breaches of investment agreements between plaintiff World Surveillance Group Inc. ("WSGI") and defendant La Jolla Cove Investors, Inc. ("La Jolla"). In a prior round of pleadings challenges, the Court dismissed without prejudice WSGI's claims for intentional misrepresentation, fraud in the inducement, and securities fraud for failure to satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), and also dismissed without prejudice WSGI's claim for breach of fiduciary duty. Dkt. No. 36. WSGI amended its complaint to try to save these claims but the amendments are not enough. They are now dismissed with prejudice. WSGI's claims for breach of contract, breach of the covenant of good faith and fair dealing, and under the California Unfair Competition Law will go forward.

# DISCUSSION

## I. Breach of Fiduciary Duty

The Court's prior dismissal order outlines the factual background and the pertinent legal standard, which will not be repeated here. *See* Dkt. No. 36.

The Court's prior order dismissed WSGI's breach of fiduciary duty claim because it failed to allege facts sufficient to show that, in this arms-length business deal, La Jolla assumed the

mantle of a fiduciary for WSGI and intended to act primarily for WSGI's benefit. Dkt. No. 36 at 4. The amended complaint again fails to plead facts indicating that the relationship between WSGI and La Jolla was anything other than a garden-variety contract with no special duties or obligations attendant to it.

The governing California state law on this issue is straightforward. A fiduciary relationship is a special circumstance in which the fiduciary "assumes duties beyond those of mere fairness and honesty" and "must undertake to act on behalf of the beneficiary, giving priority to the best interest of the beneficiary." *Comm. On Children's Television, Inc. v. Gen. Foods Corp.*, 35 Cal.3d 197, 222 (1983). "A fiduciary's power to transact business with his beneficiary is severely limited; he must use the utmost good faith and, if he profits from the transaction, the law presumes the agreement was entered into by the beneficiary without sufficient consideration and under undue influence." *Id*. (internal quotations omitted). The obligation to put the interests of the other party first is why a fiduciary relationship generally does not arise out of ordinary arms-length business dealings. In a typical business contract or relationship, one party does not commit to act in the other party's best interest rather than in its own. *See, e.g., Scognamillo v. Credit Suisse First Boston LLC*, No. C-03-2061 TEH, 2005 WL 2045807, at *4 (N.D. Cal. Aug. 25, 2005) (finding no fiduciary relationship because it was "highly unlikely that the CEO and CFO of a company on the other side of a merger deal would seek to act in the target company's best interests"). This is why a fiduciary relationship will be found only when an individual or entity has knowingly undertaken that high duty or when the law imposes the duty in special relationships such as agency, partnership or joint venture. *City of Hope Nat. Med. Center v. Genentech, Inc.,* 43 Cal. 4th 375, 386 (2008); *Comm. On Children's Television*, 35 Cal.3d at 222. Consequently, to state a claim for breach of fiduciary duty, WSGI must allege that La Jolla either knowingly agreed to act on behalf and for the benefit of WSGI, or that it entered into a relationship with WSGI that imposed that undertaking as a matter of law. *See City of Hope*, 43 Cal.4th at 386.

WSGI did not meet this requirement. In the wake of the prior dismissal, the amended complaint added three allegations intended to show a fiduciary relationship: (1) "it was WSGI's understanding that La Jolla would, in addition to, and separate from, any financial agreement

between the parties, use its expertise as investors as well as its business knowledge to take the role of fiduciaries in advising and supporting WSGI during the growth of its business, acting primarily in and for WSGI's benefit" (Dkt. No. 38 at 5); (2) La Jolla "made specific statements about how La Jolla was acting, and would continue to act, in the best interest of WSGI and its shareholders" (*id.* at 11); and (3) "[p]ursuant to the statements and assurances made by La Jolla . . . and WSGI's understanding of its relationship with La Jolla, La Jolla established, either through their explicit or implicit representations, a fiduciary relationship with WSGI, which included explicit or implicit fiduciary duties to WSGI to act on, and/or for the benefit of WSGI" (*id.* at 48).

These conclusory allegations do not come close to alleging facts sufficient to impose the exceptional duties of a fiduciary on La Jolla. Taken as a whole, the transactions described in the amended complaint -- and in the deal documents WSGI attached to it (Dkt. No. 38, Exs. A, B, and C) -- were typical arms-length business dealings between an investment house and a company looking to raise money. The amended complaint offers no facts whatsoever showing that La Jolla knowingly undertook the duty of putting WSGI's interests before its own and acting as WSGI's fiduciary. The allegation that "it was WSGI's understanding" that La Jolla was acting primarily in and for its benefit may describe WSGI's hopes and dreams but it does not demonstrate that La Jolla consciously committed to assuming that role. And the amended complaint does not allege any facts to support the allegation that La Jolla represented that it would "use its expertise as investors as well as its business knowledge to take the role of fiduciaries in advising and supporting WSGI during the growth of its business." Dkt. No. 38 at 5. Nor does the amended complaint allege anything supporting the existence of a relationship such as joint venture or agency that would impose the duty as a matter of law.

Because WSGI has failed to adequately allege the fiduciary duty claim after two opportunities, it is dismissed with prejudice.

## II. Intentional Misrepresentation and Fraud In the Inducement

As the prior dismissal order held, WSGI's claims for intentional misrepresentation and fraud in the inducement are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). The Court dismissed these claims for failure to state the "time, place, and

3

specific content of the false representations as well as the identities of the parties to the misrepresentation." Dkt. No. 36 at 4-5.

WSGI responded by adding 22 new allegations in the amended complaint. *See* Dkt. No. 38 at 4, 11-12, 20-21, 51-52, 54. But most of these additions again fail to state the time, place, specific content of the representations and identities of the parties to the misrepresentation, (*see, e.g.*, Dkt. No. 38 at 4, 51-52, 54-55 (alleging only that sometime in 2011 and 2012, La Jolla made "certain assurances" to WSGI through agents of the companies "including but not limited to" Messrs. Estrella and Huff, and that "from the beginning of the relationship with La Jolla, La Jolla fraudulently induced WSGI, through their factual omissions, to sign the Agreements")), or they are inactionable puffery, (*see, e.g.*, Dkt. No. 38 at 11, 12, 20 (Mr. Huff's statement that La Jolla was dedicated to being the "perfect [paraphrasing] financial partner," and that he "expressed La Jolla's committed desire to support the stock price in any way it could," and Mr. Sanberg's statements about La Jolla's "continued support of and commitment to WSGI's well-being," and "how excited La Jolla was to be associated with WSGI")). *See In re iPass, Inc. Sec. Litig.*, No. C 05-0228 MHP, 2006 WL 496046, at *4 (N.D. Cal. Feb. 28, 2006) (describing puffery as "statements consist[ing] of forward-looking or generalized statements of optimism that are not capable of objective verification, and lack a standard against which a reasonable investor could expect them to be pegged.") (internal quotations omitted).

The few allegations that get by the "who, what, when, where, and how" requirement of Rule 9(b) fail to state fraud claims because they were made well after the parties had executed the contracts. WSGI alleges that on the evening of June 28, 2012 -- approximately five months after the investment agreements were executed in January 2012 -- Mr. Huff told Glenn Estrella, an executive officer for WSGI, at Incanto restaurant in San Francisco that "La Jolla would continue to provide WSGI with capital to fully fund the ongoing operations of WSGI while sponsoring WSGI's further research and development as well as its marketing initiatives." Dkt. No. 38 at 11. WSGI alleges similar representations at another in-person meeting between the parties in August 2012. *Id.* at 20-21.

4

1    These statements do nothing to support WSGI's fraud claims because the ink was already
2 dry on the deal documents by the time they were allegedly made, and consequently WSGI could
3 not have relied upon them as a basis for entering into the contracts or relationship. *See*
4 *Manderville v. PCG & S Group, Inc*., 146 Cal.App.4th 1486, 1498, 55 Cal.Rptr.3d 59, 69 (2007)
5 (intentional misrepresentation claim requires plaintiff to allege and prove that he or she actually
6 relied upon the misrepresentations and, in the absence of the misrepresentation, would not have
7 entered into the contract); *Julius Castle Restaurant Inc. v. Payne*, 216 Cal.App.4th 1423, 1442,
8 157 Cal.Rptr.3d 839, 853 (2013) (fraud in the inducement claim requires reasonable reliance on
9 assurances made prior to entering into an agreement). These claims are also dismissed with
10 prejudice.

### III. Securities Fraud

Securities fraud claims must satisfy the heightened pleading standards of both Rule 9(b) and the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4. *See In re VeriFone Holdings, Inc. Sec. Litig*., 704 F.3d 694, 701 (9th Cir. 2012). The PSLRA requires a plaintiff alleging securities fraud to "plead with particularity both falsity and scienter." *Zucco Partners, LLC v. Digimarc Corp*., 552 F.3d 981, 990-91 (9th Cir. 2009).

The Court's prior order dismissed WSGI's securities claim because the complaint failed to allege scheme liability under § 10(b) of the Securities Exchange Act and Rule 10b-5, and also failed to adequately allege scienter. *See* Dkt. No. 36 at 6-7, 8 n.5. Under Rule 10b-5, a defendant who uses a "device, scheme, or artifice to defraud," or who engages in "any act, practice, or course of business which operates or would operate as a fraud or deceit," may be liable for securities fraud. 17 C.F.R. § 240.10b-5; *WPP Luxembourg Gamma Three Sarl v. Spot Runner, Inc*., 655 F.3d 1039, 1057 (9th Cir. 2011).

As an initial matter, the Court has serious doubts that La Jolla's alleged conduct falls within the scope of § 10(b) liability. In *Stoneridge Inv. Partners v. Scientific-Atlanta*, the Supreme Court considered an allegation of scheme liability under § 10(b) where there was no duty to disclose, the alleged deceptive acts were not communicated to the public, and no member of the investing public had knowledge, either actual or presumed, of the alleged deceptive acts. *See*

*Stoneridge Inv. Partners v. Scientific-Atlanta*, 552 U.S. 148, 160, 128 S.Ct. 761, 169 L.Ed.2d 627 (2008). The Court found that alleged scheme liability failed because a private cause of action under § 10(b) was not meant to be applied beyond the securities markets to cover "all commercial transactions that are fraudulent and affect the price of a security in some attenuated way." *See id.* at 161; *Sec. Exch. Comm'n. v. Zandford*, 535 U.S. 813, 820, 122 S.Ct. 1899, 153 L.Ed.2d 1 (2002) ("[Section 10(b)] must not be construed so broadly as to convert every common-law fraud that happens to involve securities into a violation"); *Marine Bank v. Weaver*, 455 U.S. 551, 556, 102 S.Ct. 1220, 71 L.Ed.2d 409 (1982) ("Congress, in enacting the securities laws, did not intend to provide a broad federal remedy for all fraud."). WSGI has not provided the Court any authority showing that La Jolla's alleged conduct falls within the confines of a § 10(b) claim, and the Court is reluctant to extend § 10(b) liability to allegations that amount merely to a breach of contract claim. *See Foster v. Wilson*, 504 F.3d 1046, 1051 (9th Cir. 2007) (finding that "at most" the plaintiff's claim alleged a breach of contract, and concluding that "[s]uch a breach, however, does not constitute federal securities fraud under § 10(b).").

Even if § 10(b) liability were proper, the additional factual allegations in the amended complaint do not salvage this claim. The alleged fraudulent scheme is that La Jolla bought WSGI's shares at a deep discount and short sold those shares "to manipulate the stock prices to their advantage." Dkt. No. 38 at 57. Short selling stock, however, requires that the seller borrow shares for a certain period of time and then return them. *See United States v. Deeb*, 175 F.3d 1163, 1165 n.4 (9th Cir. 1999) (explaining that in a "short sale, an investor contacts his broker and borrows a particular stock from the broker and sells it on the open market. The investor receives the proceeds from the sale and then has a certain amount of time within which to return the borrowed stock to the broker.") The amended complaint neither alleges that La Jolla borrowed stock from WSGI and subsequently returned it, nor provides any specific details about how La Jolla allegedly manipulated WSGI's stock price, aside from the details about La Jolla's history of funding under the Agreements. Moreover, the allegations added to the amended complaint to support WSGI's claims for fraudulent inducement and intentional misrepresentation do not bolster

its § 10(b) claim, because they do not pertain to the alleged scheme to sell WSGI's shares at a deep discount or through short sales.

In addition, the amended complaint does not allege a proper inference of scienter on the part of La Jolla. Post-PSLRA, a plaintiff must allege with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind. *See* 15 U.S.C. § 78u-4(b)(2). At minimum, a plaintiff must plead particular facts giving rise to a strong inference of deliberate or conscious recklessness. *See No. 84 Employer-Teamster Joint Council Pension Trust Fund v. America West Holding Corp.*, 320 F.3d 920, 937 (9th Cir. 2003). Even considering the complaint as a whole, WSGI has failed to plead the existence of a strong inference that anyone at La Jolla acted with deliberate or conscious recklessness in allegedly purchasing and selling WSGI's shares. The Court dismisses this cause of action with prejudice, as WSGI has had two opportunities to plead this claim.

## CONCLUSION

WSGI's claims for breach of fiduciary duty, intentional misrepresentation, fraud in the inducement and securities fraud are dismissed with prejudice. WSGI's other claims for breach of contract, breach of covenant of good faith and fair dealing, open book account, account stated and UCL violation will go forward.

**IT IS SO ORDERED.**

Dated: September 2, 2014

_____
JAMES DONATO
United States District Judge